**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MONIQUE YACHIMIAK,

    Plaintiff,

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Civil Action No. 17-7479 (MAS)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court on Monique Yachimiak's ("Plaintiff") appeal from the final decision of Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner"), denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II and Part A of Title XVI of the Social Security Act. The Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g) and reaches its decision without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court affirms the Administrative Law Judge's ("ALJ") decision.

**I.    BACKGROUND**

    **A.    Procedural History**[1]

    Plaintiff applied for DIB on August 26, 2013, alleging disability beginning on June 30, 2013. (AR 67-80.) This claim was denied initially on April 2, 2014, and again upon reconsideration

---

[1] The Administrative Record ("AR") is located at ECF Nos. 7-1 through 7-10. The Court will reference the relevant pages of the AR and will not reference the corresponding ECF citations within those files.

on December 11, 2014. (*Id.* at 67-80, 82-98.) The ALJ conducted an administrative hearing on November 10, 2016, following which the ALJ issued a decision finding that Plaintiff was not disabled. (*Id.* at 41-66, 21-34.) The Appeals Council denied Plaintiff's request for review on August 3, 2017. (*Id.* at 1-4.) On September 26, 2017, Plaintiff filed an appeal to the District Court of New Jersey. (ECF No. 1.) The case was reassigned to Chief Judge Jose L. Linares on April 13, 2018. (ECF No. 4.) Plaintiff filed his moving brief on September 10, 2018 pursuant to Local Civil Rule 9.1. (ECF No. 11.) The Commissioner filed opposition on October 25, 2018. (ECF No. 12.) Plaintiff did not reply. On February 4, 2019, this case was reassigned to the Undersigned for all further proceedings. (ECF No. 14.)

### B. Factual History

Plaintiff is a fifty-five year-old female born on November 19, 1963. (AR 132.) She holds a high school diploma, and she has worked as an assistant in various businesses, including a beauty salon, video store, children's preschool, department store, and vision center, from 1998-2012. (*Id.* at 142.) From 2012-2013, Plaintiff also assisted her father-in-law with elder care, and currently helps a neighbor with house cleaning once per week in exchange for $75.00. (*Id.* at 45-47.) Plaintiff filed her initial disability claim based on: "depression," "severe anxiety," "bipolar disorder," "obsessive compulsive disorder," and "r[ight] foot fracture, post[-]surgical repair," "orthostatic hypotension," and "glaucoma". (*Id.* at 67, 82.) She declined to apply for Supplemental Security Income. (*Id.* at 132.)

At the hearing, Plaintiff testified that she is impaired by psychological issues such as anxiety and obsessive-compulsive behavior. (*Id.* at 47-48.) She testified that her anxiety manifests in difficulty engaging in social interactions, and that '[social] situations make [her] very nervous." (*Id.* at 47.) Plaintiff also testified that she has trouble driving because she "get[s] anxiety from driving with the vehicles coming from my side." (*Id.* at 55.) Plaintiff testified that she experiences

2

the urge to check and recheck whether her home appliances are on or running before she leaves the house due to her obsessive-compulsive disorder. (*Id.* at 48.) She also testified that she has problems with her foot, for which she underwent corrective surgery, and that it will get "achy" and "swollen" and bothers her when she walks. (*Id.* at 49.) Plaintiff testified that she can walk for twenty minutes before her "ankle starts to throb," and that she has been instructed to elevate her ankle when she sits, but that she does not always do so. (*Id.* at 54.) Plaintiff indicated that she also suffers from orthostatic hypotension which "happens periodically." (*Id.* at 50.) She further testified that she was diagnosed with orthostatic hypotension after "having fainting spells." (*Id.*) Plaintiff stated that she helps around the house with putting away dishes, sweeping, general housekeeping, and laundry, and that she prepares meals for her husband regularly. (*Id.* at 50, 53.) In addition, Plaintiff testified that she was treated for insomnia and does not sleep well on a typical night. (*Id.* at 52.) According to Plaintiff, she takes eleven total medications, including: Ambien, Abilify, Wellbutrin, Trintellix, Xanax, levofloxacin, fenofibrate, midrodine, and semocytan. (*Id.*)

### C. The ALJ's Decision

On November 22, 2016, the ALJ rendered a decision. (*Id.* at 21-34.) The ALJ set forth the Social Security Administration's five-step sequential process for determining whether an individual is disabled. (*Id.* at 22-23.) At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since June 30, 2013, the alleged disability onset date. (*Id.* at 23.) At step two of the analysis, the ALJ found that Plaintiff had the severe impairments of "a right foot injury — status-post surgery, inclusive of osteochondritis dissecans," "an ankle sprain," "a tear of the anterior talofibular ligament," "a positive Epstein-Barr status," "obesity," "a bipolar disorder," "depression," and "anxiety." (*Id.* at 24.) The ALJ also noted Plaintiff's history of treatment for "obsessive-compulsive disorder," "orthostatic hypotension," "benign hypertension," "hyperlidemia," and "open angle glaucoma," but found these conditions

3

non-severe because the medical records lacked evidence that these impairments more than minimally impacted Plaintiff's ability to engage in work-related activities. (*Id.*)

At step three, the ALJ determined that none of Plaintiff's impairments, or combination of impairments, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 24-27.) The ALJ next found that Plaintiff possessed the residual functional capacity ("RFC") to perform light work, except that Plaintiff "could reach, handle, finger, and feel on a continuous basis;" "could have occasional contact with coworkers, supervisors, and the general public;" "could complete work with [three] or [four] steps and work at an [Specific-Vocational Preparation] level of [three] to [four];" "must avoid dealing directly with the public and working as a team member, constantly interacting with others;" "must avoid climbing on ladders/scaffolds;" "and must avoid exposure to unprotected heights, dangerous moving machinery, and vibrations." (*Id.* at 27.) At step four, the ALJ found Plaintiff unable to perform any past relevant work. (*Id.* at 32.) At step five, considering Plaintiff's age, education, and work experience, and relying on the testimony of the vocational expert ("VE"), the ALJ found that Plaintiff was able to perform the requirements of representative occupations available in significant numbers in the national economy, such as "vending machine attendant," "hand garment trimmer," and "marker." (*Id.* at 33.) The ALJ, accordingly, found that Plaintiff has not been under a disability from June 30, 2013 through the date of the decision. (*Id.* at 34.)

## II. **LEGAL STANDARD**

### A. **Standard of Review**

On appeal from the final decision of the Commissioner of the Social Security Administration, the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see also*

4

*Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Jones v. Sullivan*, 954 F.2d 125, 127-28 (3d Cir. 1991); *Daring v. Heckler*, 727 F.2d 64, 68 (3d Cir. 1984). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971).

In reviewing the record for substantial evidence, the Court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation omitted). Even if the Court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001). The Court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (internal citation omitted).

B.  **Establishing Disability**

In order to be eligible for entitlements under the Social Security Act, a claimant must be "unable to engage in any [SGA] by reason of any medically determinable physical or mental

5

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . " 42 U.S.C. § 423(d)(1)(A). For purposes of the statute, a claimant is disabled only if her physical or mental impairments are "of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Social Security regulations provide a five-step evaluation procedure to determine whether an individual is disabled. *See* 20 C.F.R. § 416.920(a)(4). The first step considers a claimant's work activity, if any. 20 C.F.R. § 416.920(a)(4)(i). To satisfy the first step, the claimant must establish that she has not engaged in any SGA since the onset of her alleged disability. *Id.* At the second step, the claimant must establish that she suffers from a severe impairment or "combination of impairments." 20 C.F.R. § 416.920(a)(4)(ii). The claimant bears the burden of establishing the first two requirements, and failure to satisfy either automatically results in denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If the claimant satisfies her burden, she proceeds to the third step. The third step of the evaluation procedure requires the claimant to provide evidence that her impairment is equal to one of those impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant demonstrates that she suffers from a listed impairment or that her severe impairment is equal to a listed impairment, she is presumed disabled and is automatically entitled to benefits. *Id.* If her claim falls short, the eligibility analysis proceeds to step four.

The fourth step of the analysis requires the ALJ to determine whether the claimant's RFC permits her to resume her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). "A claimant's RFC measures the most [she] can do despite [her] limitations." *Zirnsak*, 777 F.3d at 611 (citing 20 C.F.R. § 404.1545(a)(1)). If the Commissioner determines that the claimant cannot resume her past relevant work, the burden presumptively shifts to the Commissioner to show "the existence of other available work that the claimant is capable of performing." *Id.* at 612 (citations omitted). The Commissioner must show at step five that "given [the] claimant's age, education, and work experience, he or she can still perform specific jobs that exist in the national economy." *Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir. 1984) (citing *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979)); *see also* 20 C.F.R. § 404.1560. At this step, whether a claimant will receive benefits depends on the Commissioner's finding that the claimant is unable to perform work available in sufficient numbers in the national economy. *Zirnsak*, 777 F.3d at 612.

### III. DISCUSSION

Based on the Court's review of the ALJ's decision and the extensive record in the present case, the Court finds good cause to affirm the findings of the ALJ. In reaching a decision, an ALJ must evaluate the evidence and explain the reasons for accepting or rejecting evidence. *Cotter*, 642 F.2d at 706-07. Here, the ALJ provided sufficient analysis for the Court to review his findings and determine that substantial evidence supports his decision.

Plaintiff advances two arguments in support of the contention that the ALJ's decision is not supported by substantial evidence because the ALJ failed to afford the proper weight to Plaintiff's treating physicians: (1) the findings of Dr. Kloupar and Dr. Cullen, Plaintiff's treating physicians, support a determination of disability; and (2) Plaintiff's Global Assessment

7

Functioning ("GAF") scores were not inconsistent with a finding of disability.[2] (Pl.'s Moving Br. 20, 31, 33, ECF No. 11.)

Plaintiff takes issue with the weight the ALJ afforded to the state agency physicians, and argues that the opinions of Plaintiff's treating physicians, Dr. Kloupar and Dr. Cullen, should be afforded more weight because they are supported elsewhere in the medical record. (Pl.'s Moving Br. 20-33.) Additionally, Plaintiff argues that her GAF scores were "not inconsistent with disability."[3] (*Id.* at 33.)

Pursuant to regulation, a treating doctor's opinion is given controlling weight if the "treating source's medical opinion on the issue(s) of the nature and severity of [the claimant's] impairments(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ." 20 C.F.R. § 404.1527(c)(2); *see also Russo v. Astrue*, 421 F. App'x 184, 190 (3d Cir. 2011). "If,

---

[2] According to Administrative Message-AM 10366, effective July 22, 2013, and revised October 14, 2014, GAF scores are to be analyzed as opinion evidence, according to 20 C.F.R. §§ 404.1527 and 416.927(a)(2), because of issues with standardization of test administration and scores.

[3] Plaintiff's entire argument concerning her GAF scores reads:

> The ALJ noted that [Plaintiff] was assigned GAF scores between 40 and 60. The ALJ then cherry-picked through [Plaintiff's] GAF scores rejecting the scores of 50 and below and giving significant weight to the scores 51 and above. The ALJ's reasoning was simply a general conclusory statement that the higher scores were supported by the record evidence and the lower scores were not. But the ALJ gave no explanation to support his general conclusory statement. The Commissioner has directed that GAF scores constitute opinion evidence which requires adequate consideration and explanation. Since the ALJ has failed to provide sufficient consideration and explanation, remand is warranted.

(Pl.'s Moving Br. 33 (citations omitted).) The ALJ, however, explained his reasoning in his opinion, because the scores of 50 and below "reflect severe symptomatology [of] illogical speech, obsessive behavior, and suicidal thoughts." (AR 31.) Additionally, the ALJ explained that "[t]his substantial symptomatology is not consistently recorded within the evidence of record and as such, support for these low GAF scores is absent." (*Id.*)

however, the treating physician's opinion conflicts with other medical evidence, then the ALJ is free to give that opinion less than controlling weight or even reject it, so long as the ALJ clearly explains [his] reasons and makes a clear record." *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 148 (3d Cir. 2007). An "ALJ is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw its own inferences." *Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 163 (3d Cir. 1986) (citation omitted). "State agent opinions merit significant consideration as well." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). When supported by appropriate findings, "an ALJ may disregard the opinion of a treating physician if 'two physicians in the state agency evaluated the medical findings . . . and concluded that those findings did not reveal any condition that would preclude gainful employment.'" *Brown v. Astrue*, 649 F.3d 193, 197 (3d Cir. 2011) (quoting *Jones*, 954 F.2d at 129) (holding that the ALJ's decision not to credit the plaintiff's subjective limitations was supported by the substantial evidence of the state agency expert's opinion and observational medical evidence contained within the treating physician's reports). "As the ALJ clearly explained why [he] gave greater weight to the opinion of [the state agency physician], [his] decision was supported by substantial evidence and was not contrary to law." *Brown*, 649 F.3d at 196.

Here, in accordance with Third Circuit precedent, the ALJ relied on two separate state agency physicians, affording significant weight[4] to the opinions of Dr. Harpreet Khurana and Dr. Robert Starace. (AR 31.) Notably, the ALJ did not afford great weight to all of the state agency experts, finding that the opinions of Dr. Algernon Phillips and Dr. Avrind Chopra were entitled to little weight because "the record shows that [Plaintiff's] physical conditions cause more significant limitations [than the state doctor's findings reflected.]" (*Id.*) This demonstrates that the ALJ

---

[4] The ALJ stated: "Significant weight is given to these opinions, as the evidence of record supports the findings that [Plaintiff's] limitation in the various work[-]related mental categories is only moderate in degree." (AR 31.)

properly considered the impact of crediting a non-treating opinion in making his findings, but, within his discretion, favored consistency with the record as a whole. The ALJ was under no obligation to accept the opinion of a treating physician in relation to the physician's status, but was instead required to make factual findings and weigh medical evidence in accordance with the *Cotter* standard. *See Cotter*, 642 F.2d at 705-06. Similarly, the ALJ was not required to accept Plaintiff's GAF scores as objective scientific evidence, but instead was directed to analyze them as opinion evidence, and to weigh them against the other evidence of record. *Id.*

Ultimately, it is not the Court's role to re-weigh the evidence, either against or in favor of Plaintiff, or to "impose [its] own factual determinations." *Chandler*, 667 F.3d at 359 (citing *Richardson*, 402 U.S. at 401). Here, the Court has carefully considered the record and finds that the ALJ's decision is supported by substantial evidence.

## IV. CONCLUSION

For the foregoing reasons, the decision of the ALJ is affirmed. An Order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**

**Dated:** April 26, 2019